**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**, | |
| Plaintiff, | **Judge James S. Moody, Jr.** |
| v. | |
| **DARLING ANGEL PIN CREATIONS, INC.**, *et al.*, | **No. 8:10-cv-335-T-30TGW** |
| Defendants. | |

**DEFAULT JUDGMENT AND FINAL ORDER FOR**
**PERMANENT INJUNCTION AND MONETARY RELIEF**

On February 2, 2010, the Federal Trade Commission (FTC or the Commission), pursuant to Sections 5(a) and 13(b) of the Federal Trade Commission Act, 15 U.S.C. §§ 45(a), 53(b), filed its Complaint for Injunctive and Other Equitable Relief against Defendants Darling Angel Pin Creations, Inc., d/b/a Angel Pin Creations (APC); Shelly R. Olson; and Judith C. Mendez. Simultaneously, the FTC moved for a Temporary Restraining Order with Asset Freeze and Expedited Discovery pursuant to Rule 65(b) of the Federal Rules of Civil Procedure. The Court granted the FTC's motion and issued a Temporary Restraining Order on February 2, 2010. (Doc. # 4). On February 8, 2010, the Commission and Defendant Judith C. Mendez agreed to and filed with the Court a Stipulated Preliminary Injunction, which was formally entered on February 10, 2010. (Docs. ## 14 & 16). After a preliminary injunction hearing and additional briefing, the Court entered a Preliminary Injunction as to Defendant Olson and Defendant APC on February 22, 2010. (Doc. # 26).

The FTC filed for default against Defendant APC on December 7, 2010. (Doc. #39). The Clerk of Court entered default against Defendant APC for failing to appear or respond on December 8, 2010. (Doc. #40). The Court having considered Plaintiff's Motion for Default Judgment against Defendant APC, and the declaration and memorandum of law filed in support thereof,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion for Default Judgment against Defendant APC is **GRANTED**.

The Court makes the following findings of fact and conclusions of law:

### FINDINGS

1. This Court has jurisdiction of the subject matter of this case and the parties pursuant to 15 U.S.C. §§ 45(a) and 53(b), and 28 U.S.C. §§ 1331, 1337(a) and 1345.

2. Venue in this District is proper under 15 U.S.C. § 53(b) and 28 U.S.C. § 1391(b) and (c).

3. The activities of Defendant APC, as alleged in the Complaint, are in or affecting commerce, as defined in Section 4 of the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 44.

4. Defendant APC was properly served with the Summons and Complaint on February 2, 2010. Defendant APC was not represented in this matter. Default was entered against Defendant APC on December 8, 2010. (Doc. #40).

5. The Complaint states a claim upon which relief may be granted under Sections 5(a) and 13(b) of the FTC Act, 15 U.S.C. §§ 45(a) and 53(b).

6. The factual allegations in the Commission's Complaint are taken as true against Defendant APC. Based on these facts, the Court finds that Defendant APC violated Section 5(a) of

the FTC Act, 15 U.S.C. § 45(a) in connection with the marketing, promoting, offering for sale, and sale of a work-at-home employment program.

7. There is a reasonable likelihood that Defendant APC would engage in the same or similar activities as alleged in the FTC's Complaint unless permanently enjoined from such acts and practices.

8. It is proper in this case to enter equitable monetary relief and injunctive relief against Defendant APC for the consumer injury caused by its violations of the FTC Act, 15 U.S.C. § 45(a).

9. This Order is in addition to, and not in lieu of, any other civil or criminal remedies that may be provided by law.

10. Entry of this Order is in the public interest.

## DEFINITIONS

For purposes of this Order, the following definitions shall apply:

1. **"Asset"** means any legal or equitable interest in, right to, or claim to, any real and personal property, including, but not limited to, "goods," "instruments," "equipment," "fixtures," "general intangibles," "inventory," "checks," "notes" (as these terms are defined in the Uniform Commercial Code), and all chattel, leaseholds, contracts, mail or other deliveries, shares of stock, lists of consumer names, accounts, credits, premises, receivables, funds, reserve funds, and cash, wherever located.

2. **"Assisting Others"** includes, but is not limited to: (1) performing customer service functions, including, but not limited to, receiving or responding to consumer complaints; (2) formulating or providing, or arranging for the formulation or provision of, any marketing material;

(3) providing names of, or assisting in the generation of lists of, potential customers; (4) performing marketing or billing services of any kind; (5) processing credit and debit card payments; or (6) acting or serving as an owner, officer, director, manager, or principal of any entity.

3. **"Defendant APC"** means Darling Angel Pin Creations, Inc. d/b/a Angel Pin Creations, and its successors and assigns.

4. **"Defendant Mendez"** means Judith C. Mendez.

5. **"Defendant Olson"** means Shelly R. Olson.

6. **"Document"** is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, Internet sites, webpages, websites, electronic correspondence, including e-mail and instant messages, photographs, audio and video recordings, contracts, accounting data, advertisements (including, but not limited to, advertisements placed on the World Wide Web), FTP Logs, Server Access Logs, USENET Newsgroup postings, World Wide Web pages, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, and other data compilations from which information can be obtained and translated. A draft or non-identical copy is a separate Document within the meaning of the term.

7. **"FTC"** or **"Commission"** means Federal Trade Commission.

8. **"Person"** means a natural person, organization, or other legal entity, including a corporation, partnership, proprietorship, association, cooperative, or any other group or combination acting as an entity.

9. **"Work-at-Home Opportunity"** means any good, service, plan, or program that is represented, expressly or by implication, to assist an individual in any manner to earn money while working from home or from locations other than the business premises of the Defendant APC.

10. The words **"and"** and **"or"** shall be understood to have both conjunctive and disjunctive meanings.

## ORDER

### I.

### BAN ON WORK-AT-HOME OPPORTUNITIES

**IT IS HEREBY ORDERED** that Defendant APC whether acting directly or through any other Person, corporation, partnership, subsidiary, division, agent, or other device, is permanently restrained and enjoined from:

A. Advertising, marketing, promoting, offering for sale, or selling any Work-at-Home Opportunity; and

B. Assisting Others engaged in advertising, marketing, promoting, offering for sale or selling any Work-at-Home Opportunity.

### II.

### PROHIBITED REPRESENTATIONS RELATING TO ANY GOODS OR SERVICES

**IT IS FURTHER ORDERED** that Defendant APC and its agents, servants, employees, and all Persons in active concert or participation with any of them who receive actual notice of this

Order by personal service or otherwise, whether acting directly or through any corporation, partnership, subsidiary, division, agent, or other device, in connection with the advertising, marketing, promotion, offering for sale or sale of any good, service, plan, or program, are hereby permanently restrained and enjoined from misrepresenting, or Assisting Others in misrepresenting, expressly or by implication, any material fact, including, but not limited to:

    A.       Purchasers are likely to earn substantial income;

    B.       The total costs to purchase, receive, or use, and the quantity of, the good, service, plan, or program;

    C.       Any material restriction, limitation, or condition to purchase, receive, or use the good, service, plan, or program;

    D.       Any material aspect of the nature or terms of any refund, cancellation, exchange, or repurchase policy, including, but not limited to, the likelihood of a consumer obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted to the consumer; and

    E.       Any material aspect of the performance, efficacy, nature or other characteristic of the good, service, plan, or program.

### III.

### PROHIBITED REPRESENTATIONS RELATING TO SUBSTANTIATION

**IT IS FURTHER ORDERED** that Defendant APC and its agents, servants, employees, and all Persons in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any corporation,

partnership, subsidiary, division, agent, or other device, in connection with the advertising, marketing, promotion, offering for sale or sale of any good, service, plan, or program, are hereby permanently restrained and enjoined from making any representation, in any manner, expressly or by implication, about the benefits, performance, or efficacy of such product, unless, at the time the representation is made, Defendant APC possesses and relies upon competent evidence that substantiates the representation.

## IV.

## MONETARY RELIEF

**IT IS FURTHER ORDERED** that:

A.  Judgment is hereby entered in favor of the Commission and against Defendant APC, in the amount of Three Million Five Hundred and Four Thousand Seven Hundred and Fifteen dollars and Ninety-One cents ($3,504,715.91), as equitable monetary relief for consumer injury;

B.  Upon entry of this Order, the monetary judgment shall become immediately due and payable by Defendant APC and interest, computed pursuant to 28 U.S.C. § 1961(a), as amended, immediately shall begin to accrue upon the unpaid balance;

C.  All funds paid pursuant to this Section shall be made by wire transfer in accord with directions provided by the Commission, or as otherwise agreed by the Commission;

D.  All funds paid pursuant to this Order shall be deposited into a fund administered by the Commission or its agents to be used for equitable relief, including, but not limited to, redress to consumers, and any attendant expenses for the administration of such equitable relief. In the event that direct redress to consumers is wholly or partially impracticable or funds remain after the redress

is completed, the Commission may apply any remaining funds for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendant APC's practices alleged in the Complaint. Any funds not used for such equitable relief shall be deposited to the United States Treasury as disgorgement. Defendant APC shall have no right to challenge the Commission's choice of remedies under this Paragraph. Defendant APC shall have no right to contest the manner of distribution chosen by the Commission;

E. No portion of any payment under the judgment herein shall be deemed a payment of any fine, penalty, or punitive assessment; and

F. In accordance with 31 U.S.C. § 7701, Defendant APC is hereby required, unless it has done so already, to furnish to the Commission its Federal Employer Identification Number, which shall be used for the purposes of collecting and reporting on any delinquent amount arising out of Defendant APC's relationship with the government.

*Provided further*, that as to checks and money orders that APC received but has not cashed, the FTC shall shred uncashed personal checks and shall, to the extent practicable, return uncashed money orders and cashier's checks to consumers who sent them. To the extent that return to consumers is not practicable, for any reason, the FTC shall shred any unreturned money orders and cashier's checks.

*Provided further*, that the face value amounts of any uncashed checks and money orders, whether returned or destroyed, shall not offset the payment due under Paragraph A of this Section.

## V.

## CONSUMER INFORMATION

**IT IS FURTHER ORDERED** that Defendant APC, and its agents, servants, employees, and attorneys, and all other Persons in active concert or participation with it who receive actual notice of this Order by personal service or otherwise, are permanently restrained and enjoined from:

    A.    disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), of any Person which Defendant APC, Defendant Olson, or Defendant Mendez obtained prior to entry of this Order in connection with the sale of Work-at-Home Opportunities; and

    B.    failing to dispose of such customer information in all forms in its possession, custody, or control within thirty (30) days after entry of this Order. Disposal shall be by means that protect against unauthorized access to the customer information, such as by burning, pulverizing, or shredding any papers, and by erasing or destroying any electronic media, to ensure that the customer information cannot practicably be read or reconstructed.

*Provided, however*, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by a law, regulation, or court order.

## VI.

## LIFTING OF ASSET FREEZE

**IT IS FURTHER ORDERED** that the freeze of Defendant APC's Assets set forth in the Preliminary Injunction, entered by this Court on February 22, 2010, shall be lifted to the extent necessary to turn over Defendant APC's Assets as required by **Section IV** of this Order, and upon completion of the turnover, shall be lifted permanently.

## VII.

## TURNOVER OF ASSETS HELD BY THIRD PARTIES

**IT IS FURTHER ORDERED that**, to partially satisfy the monetary judgment set forth in **Section IV** above, any law firm, financial or brokerage institution, escrow agent, title company, commodity trading company, automated clearing house, payment processor, business entity, or Person served with a copy of this Order, that holds, controls or maintains custody of any account or Asset of, on behalf of, or for the benefit of Defendant APC, or has held, controlled, or maintained custody of any account or Asset of, on behalf of, or for the benefit of Defendant APC, shall turn over such Asset or funds to the Commission, in accordance with instructions provided by a representative of the Commission, within ten (10) business days of receiving notice of this Order by any means, including but not limited to by facsimile.

## VIII.

## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring and investigating compliance with any provision of this Order:

A.     Within ten (10) days of receipt of written notice from a representative of the Commission, Defendant APC shall submit additional written reports, which are true and accurate and sworn to under penalty of perjury; produce Documents for inspection and copying; appear for deposition; and provide entry during normal business hours to any business location in Defendant APC's possession or direct or indirect control to inspect the business operation;

B.     In addition, the Commission is authorized to use all other lawful means, including but not limited to:

    1.   obtaining discovery from any Person, without further leave of court, using the procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36, 45 and 69; and

    2.   having its representatives pose as consumers and suppliers to Defendant APC, its employees, or any other entity managed or controlled in whole or in part by Defendant APC, without the necessity of identification or prior notice; and

C.     Defendant APC shall permit representatives of the Commission to interview any employer, consultant, independent contractor, representative, agent, or employee who has agreed to such an interview, relating in any way to any conduct subject to this Order. The Person interviewed may have counsel present.

***Provided however,*** that nothing in this Order shall limit the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, to obtain

any documentary material, tangible things, testimony, or information relevant to unfair or deceptive acts or practices in or affecting commerce (within the meaning of 15 U.S.C. § 45(a)(1)).

## IX.

## COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that, in order that compliance with the provisions of this Order may be monitored:

A. Defendant APC shall notify the Commission of any changes in the corporate structure of Defendant APC or any business entity that Defendant APC directly or indirectly controls, or has an ownership interest in, that may affect compliance obligations arising under this Order, including but not limited to: incorporation or other organization; a dissolution, assignment, sale, merger, or other action; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; or a change in the business name or address, at least thirty (30) days prior to such change, *provided* that, with respect to any such change in the business entity about which Defendant APC learns less than thirty (30) days prior to the date such action is to take place, Defendant APC shall notify the Commission as soon as is practicable after obtaining such knowledge.

B. One hundred eighty (180) days after the date of entry of this, Defendant APC shall provide a written report to the FTC, which is true and accurate and sworn to under penalty of perjury, setting forth in detail the manner and form in which it has complied and is complying with this Order. This report shall include, but not be limited to:

       1.     Defendant APC's then-current business addresses, mailing addresses, and telephone numbers;

       2.     A copy of each acknowledgment of receipt of this Order, obtained pursuant to the Section titled "Distribution of Order;" and

       3.     Any other changes required to be reported under Subsection A of this Section;

C.     Defendant APC shall notify the Commission of the filing of a bankruptcy petition by Defendant APC within fifteen (15) days of filing;

D.     For the purposes of this Order, Defendant APC shall, unless otherwise directed by the Commission's authorized representatives, send by overnight courier (not the U.S. Postal Service) all reports and notifications to the Commission that are required by this Order to:

> Associate Director for Enforcement
> Bureau of Consumer Protection
> Federal Trade Commission
> 600 Pennsylvania Avenue, N.W.
> Washington, D.C.  20580
> RE:  FTC v. Darling Angel Pin Creations, Inc., Matter No. X100014

*Provided* that, in lieu of overnight courier, Defendant APC may send such reports or notifications by first-class mail, but only if Defendant APC contemporaneously sends an electronic version of such report or notification to the Commission at Debrief@ftc.gov; and

E.     For purposes of the compliance reporting and monitoring required by this Order, the Commission is authorized to communicate directly with Defendant APC.

## X.

## RECORDKEEPING

**IT IS FURTHER ORDERED** that, for a period of eight (8) years from the date of entry of this Order, Defendant APC is hereby restrained and enjoined from failing to create and retain the following records:

    A.    Accounting records that reflect the cost of goods or services sold, revenues generated, and the disbursement of such revenues;

    B.    Personnel records accurately reflecting: the name, address, and telephone number of each Person employed in any capacity by such business, including as an independent contractor; that Person's job title or position; the date upon which the Person commenced work; and the date and reason for the Person's termination, if applicable;

    C.    Customer files containing the names, addresses, phone numbers, dollar amounts paid, quantity of items or services purchased, and description of items or services purchased, to the extent such information is obtained in the ordinary course of business;

    D.    Complaints and refund requests (whether received directly or indirectly, such as through a third party) and any responses to those complaints or requests;

    E.    Copies of all sales scripts, training materials, advertisements, or other marketing materials; and

    F.    All records and Documents necessary to demonstrate full compliance with each provision of this Order, including but not limited to, copies of acknowledgments of receipt of this

Order required by the Sections titled "Distribution of Order" and "Acknowledgment of Receipt of Order" and all reports submitted to the FTC pursuant to the Section titled "Compliance Reporting."

## XI.

## DISTRIBUTION OF ORDER

**IT IS FURTHER ORDERED** that, for a period of five (5) years from the date of entry of this Order, Defendant APC shall deliver copies of the Order as directed below:

A. Defendant APC must deliver a copy of this Order to (1) all of its principals, officers, directors, and managers; (2) all of its employees, agents, and representatives who engage in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure set forth in Subsection A.2 of the Section titled "Compliance Reporting." For current personnel, delivery shall be within five (5) days of service of this Order upon such Defendant APC. For new personnel, delivery shall occur prior to them assuming their responsibilities. For any business entity resulting from any change in structure set forth in Subsection A.2 of the Section titled "Compliance Reporting," delivery shall be at least ten (10) days prior to the change in structure; and

B. Defendant APC must secure a signed and dated statement acknowledging receipt of the Order, within thirty (30) days of delivery, from all Persons receiving a copy of the Order pursuant to this Section.

## XII.

## ACKNOWLEDGMENT OF RECEIPT OF ORDER

**IT IS FURTHER ORDERED** that Defendant APC, within five (5) business days of receipt of this Order as entered by the Court, must submit to the Commission a truthful sworn statement acknowledging receipt of this Order.

## XIII.

## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for one year for purposes of construction, modification, and enforcement of this Order.

**DONE** and **ORDERED** in Tampa, Florida on January 10, 2011.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Odd\2010\10-cv-335.default 43.wpd